# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

___

**LEIGHTON D. LINDSEY**,
     Plaintiff,

v.                                           Case No. 17-C-329

**DR. MARY SAUVEY,**
**JEAN LUTSEY, and**
**J. LABELLE,**
     Defendants.

___

## DECISION AND ORDER

Plaintiff Leighton D. Lindsey, a Wisconsin state prisoner who is representing himself, filed this lawsuit under 42 U.S.C. § 1983. Plaintiff was allowed to proceed on an Eighth Amendment deliberate indifference claim against Dr. Mary Sauvey, Jean Lutsey, and J. LaBelle based on his allegations that the discontinuation of his medications resulted in increased pain and discomfort. Before me now is defendants' motion for summary judgment. Because no reasonable jury could find that the defendants acted with deliberate indifference towards the plaintiff and his medical needs, I will grant the defendants' motion and dismiss the case. As for plaintiff's other motions, I will deny his motion to compel and motion for order to view his files and deny as moot his motions for extensions of time. His motion to amend/correct his declaration is granted.

## I. BACKGROUND[1]

*A. The Parties*

Plaintiff was an inmate at Green Bay Correctional Institution ("GCBI") at all times relevant to this case. Docket No. 56 at ¶ 1. Defendant Dr. Mary Sauvey worked at GBCI as a physician, *id.* at ¶ 2, and Jean Lutsey was the Health Services Manager at GBCI, *id.* at ¶ 3. James LaBelle was the Regional Nursing Coordinator for the Bureau of Health Services and also served as the reviewing authority for inmate complaints related to healthcare for all Wisconsin Department of Corrections prisons, including GBCI. *Id.* at ¶ 4.

*B. Plaintiff's Medical Care*

On July 20, 2015, plaintiff became "irate" when the guard passing out medication gave him the wrong medication. Docket No. 1 at ¶ 18. He told the guard he needed to write an incident report, and the guard responded that plaintiff does not boss him around. *Id.* Plaintiff then threw his medication on the floor. *Id.*; Docket No. 56 at ¶ 5. The guard told plaintiff he would call Health Services and have them discontinue his medication. Docket No. 1 at ¶ 19. On July 21, 2015, a member of either the nursing or security staff informed Dr. Sauvey that plaintiff was misusing his medication. Docket No. 56 at ¶ 6. Misuse of medication, which includes throwing medications on the ground (or refusing to take them), was a proper ground to consider discontinuation of medication if medically appropriate. *Id.* at ¶ 7. Dr. Sauvey discontinued plaintiff's Vitamin D, Reguloid,

---

[1] The facts are taken from "Defendants' Proposed Undisputed Facts" (Docket No. 56) and "Plaintiff's Response to Defendants' Proposed Findings of Fact" (Docket No. 77). I also look to the plaintiff's complaint for background information. Plaintiff did not submit his own proposed findings of fact.

Mintox, and Tylenol until further notice, effective July 21, 2015. *Id.* at ¶ 8. They were all over-the-counter medications. *Id.* at ¶ 22.

Dr. Sauvey prescribed plaintiff Vitamin D even though his levels were average for an adult African American male because plaintiff was regularly in the Restrictive Housing Unit. *Id.* at ¶¶ 9-11. From a medical standpoint, plaintiff did not need the Vitamin D. *Id.* at ¶ 11. As for the rest of the medications Dr. Sauvey discontinued, plaintiff took Reguloid for constipation; Mintox for occasional heartburn; and Tylenol for general aches and pains. *Id.* at ¶ 12. The parties dispute with what regularity plaintiff took these medications. Docket No. 77 at ¶ 13. Both Tylenol and Mintox were available to plaintiff at the Canteen. Docket No. 56 at ¶ 17. If he wanted to keep taking them, he could have ordered them with his own funds. *Id.* at ¶ 18. The only difference between ordering these medications and being prescribed them is who pays for them. *Id.* at ¶ 19.

When Dr. Sauvey decided to discontinue the medication "until further notice," she intended and planned to monitor his medical needs for the medications (as well as his compliance with medications). *Id.* at ¶ 20. Plaintiff was seen an average of every eight days, for a variety complaints, in 2015 through 2016. *Id.* at ¶ 29. If a medical condition arose that, in her opinion, required a medication—even if it was one she previously discontinued—Dr. Sauvey would have been open to restarting it. *Id.* at ¶ 21. She restarted plaintiff's Reguloid/Miralaz on August 17, 2015 after he complained of mild constipation . *Id.* at ¶ 23. When Dr. Sauvey saw plaintiff on August 28, 2015, she noted that his knee pain was stable. *Id.* at ¶ 26. By the time she saw plaintiff on September 25, 2105, he was complaining of more knee pain. *Id.* Dr. Sauvey then started Meloxicam, in place of Tylenol. *Id.* at ¶ 24. Meloxicam is similar to Tylenol, but it has

3

stronger pain relieving qualities. *Id.* at ¶ 25. She also reinstated plaintiff's Mintox/antacid tablets on October 3, 2015 because he reported he was experiencing heartburn. *Id.* at ¶ 27.

*C. Plaintiff's Complaints and Correspondence*

Plaintiff contacted Lutsey and LaBelle regarding his dissatisfaction with Dr. Sauvey's decision to discontinue his medications. *Id.* at ¶ 30. Lutsey was copied on the reviewing authority's decisions for offender complaint GBCI-2015-14137, *id.* at ¶ 31, and contacted regarding inmate complaint GBCI-2015-14939, *id.* at ¶ 32. In both instances, Lutsey reviewed the relevant medical files and documents. *Id.* at ¶ 33. She noted that Dr. Sauvey had a plan to monitor plaintiff's condition and that plaintiff was being seen on a consistent basis. *Id.* Lutsey deferred to plaintiff's medical providers' opinions as they seemed appropriate and she had no reason to believe that plaintiff's medical needs were not being met. *Id.* at ¶ 34. Lutsey did not do further investigating because she felt the situation was being handled appropriately. Her decision was upheld through the complaint system, including appeal. *Id.*

On September 3, 2015, a nurse forwarded Lutsey a letter from plaintiff. *Id.* at ¶ 35. She responded to the letter on September 8, 2015, after having reviewed his medical file and explained to him that his inhaler (albuterol) was discontinued due to abuse and that the risks outweighed the benefits. *Id.* at ¶ 36. She noted that he had been evaluated on August 28, September 3, and September 4 and reminded him to report abnormal symptoms rather than asking for an inhaler he did not have an order for. *Id.* Lutsey was comfortable that plaintiff was abusing his inhaler and that he was being evaluated on a regular basis. *Id.* She had no concerns about the appropriateness

4

of plaintiff's care because he was being seen and evaluated whenever he reported abnormal symptoms. *Id.* at ¶ 38. She deferred to the plaintiff's medical providers' decisions because they seemed appropriate based on her review of the records. *Id.* at ¶ 37.

As for Labelle, his only involvement in this case was serving as the reviewing authority on the two inmate complaints already mentioned—GBCI-2015-14137 and GBCI-2015-14939. *Id.* at ¶ 39. The Inmate Complaint Examiner ("ICE"), Jodene Perttu dismissed GBCI-2015-14137 because, per plaintiff's own admission, plaintiff had abused his medications and the physician reviewed the incident and history and determined the risk outweighed the benefit of him receiving his medications. *Id.* at ¶ 41. She believed that plaintiff's treatment was proper given that he had thrown his medications on the floor and had a history of hoarding medication, which could cause liver damage if not used properly. *Id.* at ¶ 43. Perttu directed Lindsey to submit a Health Services Request if he experienced abnormal medical symptoms. *Id.* at ¶ 42. Because Perttu reviewed the issue and found that plaintiff was abusing his medications, which could be detrimental to his health, LaBelle accepted Perttu's recommendation and dismissed complaint GBCI-2015-14137. *Id.* at ¶ 45.

LaBelle also agreed with Perttu's recommendation on complaint GBCI-2014-14939. *Id.* at ¶¶ 46, 50. Perttu dismissed the complaint because she determined that plaintiff was creating a safety risk by holding his medication and the risk outweighed the benefit. *Id.* at ¶ 46. Dr. Sauvey discontinued his medication until she evaluated him in person on August 14, 2015, at which time she restarted his blood pressure medication. *Id.* LaBelle also conducted his own investigation and noted that plaintiff had been seen

by the physician (who had the proper education to diagnose and prescribe the most safe and effective medication for the needed treatment). *Id.* at ¶ 47. LaBelle found that plaintiff was noted to be holding his medication, which raised concerns about potential negative impacts to his health if overused. *Id.* at ¶ 48. LaBelle deferred to plaintiff's medical providers, but he also had no reason to believe plaintiff's medical needs were not being met because he was being seen regularly at the Health Services Unit. *Id.* at ¶ 53. Based on his investigation, he agreed with Perttu and dismissed the complaint on August 25, 2015. *Id.* at ¶ 50.

## II. ANALYSIS

### A. Summary Judgment Standard

A party is entitled to summary judgment if it shows that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). To survive a motion for summary judgment, a non-moving party must show that sufficient evidence exists to allow a jury to return a verdict in its favor. *Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). For the purposes of deciding defendants' motion, I resolve all factual disputes and make all reasonable factual inferences in favor of plaintiff, who is the non-moving party. *Springer v. Durflinger*, 518 F.3d 479, 483-84 (7th Cir. 2008).

### B. Plaintiff's Medical Treatment

"Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates 'deliberate indifference to serious medical needs of prisoners.'" *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To prove a deliberate-indifference

6

claim, a plaintiff must first show that he has "a medical condition 'that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention.'" *Edwards v. Snyder*, 478 F.3d 827, 830–31(7th Cir. 2007) (quoting *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)). He must then show "that the prison official[s] knew of 'a substantial risk of harm to [him] and disregarded the risk.'" *Id.* at 831 (first quoting *Greeno*, 414 F.3d at 653; and then citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Medical malpractice or a disagreement as to the proper course of medical treatment is not deliberate indifference. *Id.* (first citing *Estelle*, 429 U.S. at 107; then citing *Greeno*, 414 F.3d at 653; and then citing *Estate of Cody by Pardue v. Fromm*, 94 F.3d 254, 261 (7th Cir. 1996)). In order to survive summary judgment, the evidence must be such that a reasonable jury "could infer the treatment was 'so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate' a medical condition." *Id.* (quoting *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996)).

I am not convinced that plaintiff can show he has a serious medical condition, but even assuming that he does, he has not shown that any of the defendants intentionally mistreated him or disregarded a risk to his health. As for Dr. Sauvey, she discontinued plaintiff's medications based on a prison policy with a clear plan to monitor plaintiff's condition. And that is indeed what happened: plaintiff was seen regularly (every eight days or so), and Dr. Sauvey re-prescribed medications when plaintiff needed them. When he complained of mild constipation, she re-prescribed his Reguloid/Miralax. When plaintiff complained of heartburn, Dr. Sauvey re-prescribed Mintox/antacid tablets. And when plaintiff continued to have knee pain, she started him on Meloxicam,

7

a medication even stronger than Tylenol. No reasonable jury could find that Dr. Sauvey was deliberately indifferent to plaintiff's medical needs. She responded appropriately and quickly as plaintiff's medical needs arose.

As for Lutsey and LaBelle, plaintiff bases his claim against them on their alleged failure to help him have his medications reinstated. In short, he believes they were deliberately indifferent by failing to somehow get Dr. Sauvey to re-prescribe his medications. But if he cannot show that Dr. Sauvey's decision to discontinue his prescription medications was not deliberately indifferent (and he cannot), Lutsey's and LaBelle's failure to intervene or override her decision was also not deliberately indifferent.

In sum, deliberate indifference "indicates a culpable state of mind," *Norfleet v. Webster*, 439 F.3d 392, 397 (7th Cir. 2006) (internal citation omitted), and the undisputed facts would not allow a reasonable jury to find Dr. Sauvey's decision to discontinue plaintiff's prescriptions or Lutsey's and LaBelle's lack of intervention on his behalf were done with a culpable state of mind. Therefore, summary judgment is appropriate, and I will grant the defendants' motion.

*C. Plaintiff's Other Motions*

Plaintiff has also filed numerous other motions, which I will address in turn. First, both of plaintiff's motions for an extension of time are denied as moot. He has filed all materials required of him. His motion to correct some citations in his declaration is granted. I read his declaration with the corrections he requested.

Plaintiff also filed two discovery-related motions. The first is a motion to compel, in which he requests that the defendants be ordered to produce the defendants'

personnel files. The defendants are correct that plaintiff failed to comply with Civil Local Rule 37, and Federal Rule of Civil Procedure 37, and confer with defendants prior to moving to compel. I could deny the motion on that ground alone, but because plaintiff is *pro se*, I will also assess the motion on the merits. What plaintiff is asking for is access to secure information that he says he needs because there "may be relevant information that shows a custom or pattern." Docket No. 51 at 1. However, plaintiff is not bringing a *Monell*[2] claim against a government entity. Therefore, I will deny his motion to compel.

Finally, plaintiff filed a motion asking for me to issue an order that will allow him to view his security, medical, and legal files. He has raised this issue multiple times, and again, I will deny his motion. The defendants have provided sworn declarations showing the times he has been allowed to access his medical file and other files and had failed to request access to his security file. He was not denied the opportunity to review his files, so his motion is denied.

## ORDER

**THEREFORE, IT IS ORDERED** defendants' motion for summary judgment (Docket No. 54) is **GRANTED**. Judgment will be entered accordingly.

**IT IS ALSO ORDERED** that plaintiff's motions for extensions of time (Docket Nos. 49 and 67) are **DENIED AS MOOT**.

**IT IS ALSO ORDERED** that plaintiff's motion to amend/correct his declaration (Docket No. 79) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff's motion to compel (Docket No. 51) is **DENIED**.

---

[2] *Monell v. Dep't of Soc. Svc's of the City of New York*, 436 U.S. 658 (1978).

**IT IS FURTHER ORDERED** that plaintiff's motion for an order to review his files (Docket No. 48) is **DENIED**.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin, this 27th day of July, 2018.

s/Lynn Adelman_____
LYNN ADELMAN
United States District Judge